Joon M. Khang (CSBN 188722)
Judy L. Khang (CSBN 192454)
**KHANG & KHANG LLP**
4000 Barranca Parkway, Suite 250
Irvine, California 92604
Telephone: (949) 419-3834
Facsimile: (949) 385-5868
Email: joon@khanglaw.com

Attorneys for Samuel Michael Saber
Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>SAMUEL MICHAEL SABER,<br><br>          Debtor. | Case No.: 2:18-bk-16688-BB<br><br>Chapter 11<br><br>**DEBTOR'S OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362; DECLARATIONS OF SAMUEL MICHAEL SABER AND JANAKA L. PERERA IN SUPPORT THEREOF**<br><br>Hearing:<br><br>Date:  May 14, 2019<br>Time:  10:00 am<br>Ctrm:  1539<br>          255 E. Temple St.<br>          Los Angeles, CA 90012 |

1

1   Samuel Michael Saber, debtor and debtor in possession ("Debtor") herein opposes the

2   Motion for Relief from the Automatic Stay (the "Motion") filed by movant JP Morgan Chase

3   Bank, NA ("Chase") based on the following:

4   The Motion seeks relief based on the assertions that: 1) there is insufficient equity cushion

5   to protect Chase's interest, pursuant to 11 U.S.C. § 362(d)(1); and 2) the subject property (the

6   "Property") is not necessary to an effective reorganization, pursuant to 11 U.S.C. § 362(d)(2)(B).

7   This Motion must be denied based on the following:

8   1)   There is equity in the Property; and

9   2)   The Property is necessary to an effective reorganization, which is in process.

10  **I.    FACTS**

11  Debtor is the owner of real property located at 101 Via Jucar, aka 450 Via Lido Soud,

12  Newport Beach, California (the "Property"). Chase is the servicer of the loan. Based on Debtor's

13  recent research on the value of the Property, Debtor obtained estimates of the value of the Property

14  which were obtained online from two websites; Zillow.com and Redfin.com. Zillow.com values

15  the Property at $4,439,250 and Redfin values the Property at $4,633,395. Attached hereto as

16  Exhibit A is a true and correct copy of the value estimate obtained from Zillow.com and attached

17  hereto as Exhibit B is a true and correct copy of the value estimate obtained from Redfin.com.

18  Debtor has also obtained a broker opinion of value from Janaka Perera, a real estate broker at

19  Perch Properties, which states that the property is worth $4,995,000. Attached hereto as Exhibit C

20  is a true and correct copy of the broker opinion obtained from Mr. Perera. Mr. Perera has done a

21  more thorough analysis of the Property with more similar age and sized comparable properties.

22  Debtor has also obtained a second broker opinion of value from Karen Loera, who values the

23  Property at $4,600,000. Attached hereto as Exhibit D is a true and correct copy of broker opinion

24  obtained from Ms. Loera.   See attached Declaration of Samuel Michael Saber ("Saber

25  Declaration") at ¶¶ 1-6.

26  Chase's appraisal is biased and unreliable. The "drive by appraisal" submitted by Chase

27  is the least reliable because no real inspection of the property was done and the comparable

28  properties used are not similar to the subject Property. Chase's appraiser used very old homes for

it's comparables. Comparable property 1 is 70 years old, Comparable property 2 is 42 years old, Comparable property 3 is 69 years old. The subject Property is only 15 years old. No details of the subject Property improvements are detailed. A "drive by appraisal" is commonly used when looking for the lowest or minimum value for an appraisal report because nothing detailed about the subject property interior is included in the report. See attached Saber Declaration at ¶ 7.

Chase admits in its appraisal at page 55, that the Newport Beach real estate market is "stable and in balance" and the estimated time needed to sell the Property is "under 3 months marketing time." Further, Debtor obtained additional information that establishes that the real estate market in Newport Beach is not only stable but increasing in value. The prestigious national firm of Douglas Elliman Real Estate from New York, established in 1911, publishes reports on upscale neighborhoods throughout California and specifically, does a regular report for Newport Beach, CA. The most recent Micro Macro Report (the "Report") dated March 2019 shows the year over year price increase for single family homes in Newport Beach to have a year over year price increase of 11.7%. This strong market appreciation assures Chase's equity cushion is secure and rising on a consistent basis. Chase's appraisal report stated on page 55 "market conditions appear stable with a moderate increase in values over the prior 12-18 mos." The appraisal report also states on page 55 "No adverse conditions or negative factors appear to exist at time of inspection." Attached hereto as Exhibit E is a true and correct copy of the Report. See attached Saber Declaration at ¶ 8.

Based on the above, Chase's "drive by" appraised value for the Property is not reliable and Mr. Perera's valuation is more accurate and reliable as is Ms. Loera's valuation. See attached Saber Declaration at ¶ 9.

Debtor has been actively involved in managing the Property and currently has it leased. Debtor is paying all the upkeep of the Property, the homeowners association fees and all other expenses to maintain the Property. Debtor is maintaining the value of the Property. See attached Saber Declaration at ¶ 10.

Chase claims that the outstanding balance on the mortgage is $4,215,991.19. This is not accurate. Debtor believes that pursuant to the consent decree between the California Attorney

General and Chase, among others, the outstanding balance on the mortgage should be far less than $4,215,991.19 and Debtor disputes this amount that Chase now asserts. Attached hereto as Exhibit F is a true and correct copy of the consent decree between the California Attorney General and Chase. See attached Saber Declaration at ¶ 11.

Debtor has been defrauded by Chase over the years through their admitted interest rate manipulations. Based on Debtor's calculations, Chase's loan balance should be as follows:

Total amount of overcharge is [$167,588.92, which is 137 months of interest (652,992.92 x 38% (137 out of 360) of the loan over charge is $248,499.73]

Improper charges by Chase:

| | | | |
|---|---|---|---|
| 7/16 | $ 811.25 | Advertising | |
| 7/10 | $ 2,336.00 | Title Fees | |
| 12/1 | $ 2,351.00 | Title Fees | |
| 6/06 | $ 990.00 | Title Fees | |
| | $ 6,488.25 | Subtotal | Erroneous charges on Chase proof of claim |
| | $ 45,184.80 | Four Trial House Payments for Chase loan modification program | |
| | $ 51,673.05 | Total amounts of charges/credits to account missing | |
| | $ 461,088.65 | Total over charges | |
| | $ 512,761.70 | Total of the amount to be deducted from Chase's claim | |
| | $ 4,215.919.19 | Chase proof of claim total | |
| | $ -512,761.70 | Deductions for over charges and improper charges | |
| | $ 3,703,157.49 | Proper amount of Chase's claim and my loan balance | |

Attached hereto as Exhibit G is an amortization table and detailed explanation of the above calculations as well as proof of loan modification payments that Debtor made to Chase. See attached Saber Declaration at ¶ 12.

Based on the above, if Chase's correct balance is $3,703,157 and the Property value is $4,995,000, that would leave $1,291,843 (29%) equity cushion to protect Chase's interest. Using

1 the lower end of the valuation of $4,439,250 from Zillow.com, that would leave $736,093 (17%)

2 equity cushion to protect Chase's interest. See attached Saber Declaration at ¶13.

3   Debtor's assertion that Chase has defrauded him is supported by the following:

4  a) Chase defrauded Debtor by not offering a fair and reasonable loan modification.

5    Chase fully approved Debtor's loan modification request then accepted four

6    $11,296.20 trial monthly payments. Then Chase proposed raising Debtor's monthly

7    payment from $8,818 and raised the principal and interest 61% (sixty one percent)

8    to $14,241.16 a month, after Debtor notified Chase that he was experiencing

9    hardship. Then after Chase realized that the payment WITH property taxes and

10    insurance exceeded Debtor's current monthly income, after taxes. Chase indicated

11    that they would review again and get back to Debtor but they never did. Chase

12    eventually said just reapply again and Debtor did. However, they never gave

13    Debtor a new modification. This was Chase's "bad faith" loan modification

14    program. Attached hereto as Exhibit H are true and correct copies of Debtor's loan

15    modification documents.

16  b) Chase has a decade long history of failing to properly consider loan modifications

17    across the US and has done so with a systematic plan to get ownership of millions

18    of appreciating properties sooner or later. Debtor has been a victim of Chase's

19    criminal conduct. Attached hereto as Exhibit I is a plea agreement signed by Chase

20    in U.S. District Court in Connecticut in 2015, wherein Chase has admitted to this

21    criminal conduct.

22  c) Chase has pled guilty to the Federal crimes involving widespread "interest rate

23    manipulation." Debtor's Chase loan is a variable rate loan. The opportunity

24    for Debtor to have the Federal Court hear his claim is in this forum. The signed

25    federal criminal consent decree bearing Chase's executive signature confirms the

26    guilt. As a Federal right in the Crime Victims' Rights Act Debtor is entitled

27    to restitution, "a correct loan balance." Knowing how much is owed is critical to

28    the financial affairs of any borrower. To date Chase has never corrected the home

1    loan balance after being requested to do so.  Attached hereto as Exhibit L is text of

2    the Crime Victims' Rights Act.

3  See attached Saber Declaration at ¶ 14.

4    Debtor has sued Chase in State court for their fraudulent handling of his loan.  Attached

5  hereto as Exhibit J is a true and correct copy of Debtor's complaint against Chase.  Chase filed a

6  demurrer to the complaint, which was granted by the trial court without leave to amend.  Debtor

7  appealed that ruling and the appellate court granted Debtor's appeal and remanded the case back to

8  the trial court.  Attached hereto as Exhibit K is a true and correct copy the appellate court's ruling

9  on Debtor's appeal.  The case is now pending in the trial court.  See attached Saber Declaration at

10  ¶ 15.

11  **II.    ARGUMENT**

12    **A.    <u>The Burden of Proof</u>**

13    The party seeking stay relief has the burden of proof on the issue of the debtor's equity in

14  the property, and any party opposing such relief has the burden of proof on all other issues. *See* 11

15  U.S.C. § 362(g). While the party opposing the stay relief has the ultimate burden of persuasion on

16  all issues except the existence of equity, the moving party has the "initial burden of production or

17  going forward with evidence to establish that a *prima facie* case for stay relief exists, before the

18  respondent is obligated to come forward with its proof." *In re Kowalsky*, 235 B.R. 590, 594

19  (Bankr. E.D. Tex. 1999); *see also, In re Plumberex Specialty Products, Inc.*, 311 B.R. 551, 557

20  (Bankr. C.D. Cal. 2004). The debtor need not offer any evidence of adequate protection until and

21  unless the creditor establishes its *prima facie* case. *See In re Kim*, 71 B.R. 1011, 1015 (Bankr. C.D.

22  Cal. 1987). If the moving party fails to establish a *prima facie* case, then the motion must be

23  denied. *See id.* at 1016 ("[T]he motion must be denied if the moving creditor fails to make a prima

24  facie case for relief from stay, and the burden of proof set forth in section 362(g) plays no role.");

25  *see also Plumberex*, 311 B.R. at 557 ("If the movant fails to meet its initial burden to demonstrate

26  cause, relief from the automatic stay should be denied."). To establish a *prima facie* case the

27  creditor "must demonstrate a factual and legal right to the relief that it seeks." *See In re Elmira

28  Litho, Inc.*, 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994); *see also Plumberex*, 311 B.R. at 557 n.11.

**B.**    **Cause Does Not Exist Under 11 U.S.C. § 362(d)(1) as Chase is Adequately Protected by the Equity Cushion in the Property**

Chase has moved for relief from stay for "cause" under 11 U.S.C. §362(d)(1) in connection with real property located at 101 Via Jucar, aka, 450 Via Lido Soud, Newport Beach, CA. Section 362(d)(1) of the Bankruptcy Code provides, in relevant part:

> "On request of a party in interest and after notice and a hearing, the
> court shall grant relief from the stay provided under subsection (a) of this
> section, such as by terminating, annulling, modifying, or conditioning
> such stay –
> (1) for cause, including the lack of adequate protection of an interest in
>    the property of such party in interest. "

"Cause" is not statutorily defined, but is determined on a case-by-case basis. *See In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990); *see also In re Conejo Enterprises, Inc.*, 96 F.3d 346, 351 (9th Cir. 1996) ("The decision to grant or deny relief from the automatic stay is committed to the sound discretion of the bankruptcy court. . . .")

The term "adequate protection" is not defined in the Bankruptcy Code but it is well established that the existence of an appropriate equity cushion alone constitutes adequate protection. *See In re Mellor*, 734 F.2d 1396, 1401 (9th Cir. 1984) ("[T]he existence of an equity cushion as a method of adequate protection . . . is the classic form of protection justifying the restraint of lien enforcement by a bankruptcy court. In fact, it has been held that the existence of an equity cushion, standing alone, can provide adequate protection."); *see also In re McCombs Properties VI, Ltd.*, 88 B.R. 261, 265 (Bankr. C.D. Cal. 1988) (An equity cushion in the underlying property satisfies the requirement for adequate protection). Courts have determined that a 10% equity cushion is sufficient to provide adequate protection. *See In re McGowan*, 6 B.R. 241, 243 (Bankr. E.D. Pa. 1980); *Mellor*, 734 F.2d at 1400 (citing cases finding an equity cushion between 10% and 20% sufficient); *In re Boulders on the River, Inc.*, 164 B.R. 99, 104 (9th Cir. B.A.P. 1994) ("[w]e find Pacific was adequately protected with a cushion of 11.45%").

According to Chase's "drive by appraisal," the Property has a fair market value of

1   $3,425,000. *See* Exhibit 4. Chase's secured claim, as alleged in the Motion, is $4,215,991. See

2   Motion, Page 7, ¶ 8. As stated above, Debtor disputes both the appraised market value and the

3   amount of Chase's claim.

4        Even if there was not a substantial equity cushion (which there, in fact, is), to establish

5   cause under § 362(d)(1) for lack of adequate protection, Chase must produce evidence that the

6   value of its collateral, the Property, is *declining post-petition*. *See In re Weinstein*, 227 B.R. 284,

7   296 (9th Cir. B.A.P. 1998) ("Adequate protection is provided to safeguard the creditor against

8   depreciation in the value of its collateral during the reorganization process."); *In re Deico*

9   *Electronics, Inc.*, 139 B.R. 945, 947 (9th Cir. B.A.P. 1992) ("The amount by which the collateral

10  depreciates from that [post-petition] valuation is the amount of protection adequate to compensate

11  the creditor for the loss occasioned by bankruptcy."); *United Sav. Ass'n of Texas v. Timbers of*

12  *Inwood Forest Associates, Ltd.*, 484 U.S. 365, 370 (1998) ("It is common ground that the 'interest

13  in property' referred to by § 362(d)(1) includes the right of a secured creditor to have the security

14  applied in payment of the debt upon completion of reorganization; and that that interest is not

15  adequately protected if the security is depreciating during the term of the stay."); *In re Cambridge*

16  *Woodbridge Apartments, LLC*, 292 B.R. 832, 841 (Bankr. N.D. Ohio 2003) (stating that, to prevail

17  under § 362(d)(1), a creditor must establish, among other things, "a decline in the value of the

18  collateral securing the debt . . .")

19       The Property is located in a very desirable part of Newport Beach that has experienced

20  great property appreciation in recent years and there is no indication that this is likely to be

21  reversed in the foreseeable future. As stated above, the value of the Property is increasing and

22  Chase admits that prices are stable in the Newport Beach.

23       Here, there is no argument from Chase that the Property is declining in value. With no

24  evidence of a decline in value, Chase has failed to meet its burden of proof that Chase's interest is

25  not adequately protected. Therefore, there is no cause to grant relief under 11 U.S.C. § 362(d)(1).

26      **C.**    **The Property Has Sufficient Equity Cushion and Is Necessary to an Effective**

27            **Reorganization, Thus, Relief from the Automatic Stay Should Not be Granted**

28            **under 11 U.S.C. § 362(d)(2)(A) or 11 U.S.C. § 362(d)(2)(B)**

1   Section 362(d)(2) provides that the court shall grant relief from the automatic stay, "if—

2   (A) the debtor does not have equity in such property; and (B) such property is not necessary to an

3   effective reorganization." 11 U.S.C. §§ 362(d)(2)(A) and (B).  Emphasis added.

4   As established above, there is equity in the Property.  Accordingly, Chase cannot meet its

5   burden of proving that no equity in the Property exists and is not entitled to relief under §

6   362(d)(2) on this basis alone. *See* 3 COLLIER ON BANKRUPTCY ¶ 362.07[4] ("Both elements

7   of the test must be met: there must be no equity and the property must not be necessary for

8   effective reorganization.").  Here, there is equity and the Property is necessary to an effective

9   reorganization.

10   Debtor filed his disclosure statement [docket no. 151] and plan [docket no. 152] on April

11   22, 2019.  Debtor also filed his motion for approval of the disclosure statement [docket no. 153] on

12   April 22, 2019.  The hearing on the motion for approval of the disclosure statement is set for

13   hearing on June 5, 2019.  The Property is a necessary component of Debtor's plan as rents

14   collected at the Property will be used to partially fund Debtor's plan.

15   In this case, as shown above, there is both an equity cushion to protect Chase's interest and

16   the Property is necessary to an effective reorganization.  For these reasons, the Motion must be

17   denied.

18   **III.    CONCLUSION**

19   Based on the foregoing, this Motion for relief from the automatic stay should be denied.

20   Additionally, to the extent that this Court is considering granting the Motion, due to the fact that

21   the Property is necessary to a reorganization that is in process, at the very least, this Court should

22   continue the hearing on this Motion until after the disclosure statement hearing, which is set for

23   June 5, 2019.

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1    Further, if this Court should be inclined to grant Chase's Motion, Debtor requests in the

2    alternative, that the Court set an evidentiary hearing to value the Property and also to determine the

3    disputed amount of Chase's claim, prior to a ruling on this Motion.

4    DATED:  April 30, 2019                          KHANG & KHANG LLP

5

6                                                   By: _____

7                                                        Joon M. Khang

8                                                   Attorneys for Samuel Michael Saber
                                                    Debtor and Debtor in Possession
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DECLARATION OF SAMUEL MICHAEL SABER

I Samuel Michael Saber declare as follows:

1.    I am over eighteen years of age. I am the Debtor in this case. The following averments are of my personal knowledge and if called upon can testify thereto.

2.    I am the owner of real property located at 450 Via Lido Soud, Newport Beach, California (the "Property").

3.    Chase is the servicer of the loan.

4.    Based on my recent research on the value of the Property, I have estimates of the value of the Property which I obtained online from two websites; Zillow.com and Redfin.com. Zillow.com values the Property at $4,439,250 and Redfin values the Property at $4,633,395. Attached hereto as Exhibit A is a true and correct copy of the value estimate I obtained from Zillow.com and attached hereto as Exhibit B is a true and correct copy of the value estimate I obtained from Redfin.com.

5.    I have also obtained a broker opinion of value from Janaka Perera, a real estate broker at Perch Properties, which states that the property is worth $4,995,000. Attached hereto as Exhibit C is a true and correct copy of the broker opinion I obtained from Mr. Perera. Mr. Perera has done a more thorough analysis of the Property with more similar age and sized comparable properties.

6.    I have also obtained a second broker opinion of value from Karen Loera, who values the Property at $4,600,000. Attached hereto as Exhibit D is a true and correct copy of broker opinion I obtained from Ms. Loera.

7.    Chase's appraisal is biased and unreliable. The "drive by appraisal" submitted by Chase is the least reliable because no real inspection of the property was done and the comparable properties used are not similar to the subject Property. Chase's appraiser used very old homes for it's comparables. Comparable property 1 is 70 years old, Comparable property 2 is 42 years old, Comparable property 3 is 69 years old. The subject Property is only 15 years old. No details of

the subject Property improvements are detailed. A "drive by appraisal" is commonly used when looking for the lowest or minimum value for an appraisal report because nothing detailed about the subject property interior is included in the report.

8.      Chase admits in its appraisal at page 55, that the Newport Beach real estate market is "stable and in balance" and the estimated time needed to sell the Property is "under 3 months marketing time."   Further, I have obtained additional information that establishes that the real estate market in Newport Beach is not only stable but increasing in value.  The prestigious national firm of Douglas Elliman Real Estate from New York, established in 1911, publishes reports on upscale neighborhoods throughout California and specifically, does a regular report for Newport Beach, CA. The most recent Micro Macro Report (the "Report") dated March 2019 shows the year over year price increase for single family homes in Newport Beach to have a year over year price increase of 11.7%. This strong market appreciation assures Chase's equity cushion is secure and rising on a consistent basis. Chase's appraisal report stated on page 55 "market conditions appear stable with a moderate increase in values over the prior 12-18 mos." The appraisal report also states on page 55 "No adverse conditions or negative factors appear to exist at time of inspection." Attached hereto as Exhibit E is a true and correct copy of the Report.

9.      Based on the above, Chase's drive by appraised value for the Property is not reliable and Mr. Perera's valuation is more accurate and reliable, as is Ms. Loera's valuation.

10.     I have been actively involved in managing the Property and currently have the Property leased. I am paying all the upkeep of the Property, the homeowners association fees and all other expenses to maintain the Property. I am maintaining the value of the Property.

11.     Chase claims that the outstanding balance on the mortgage is $4,215,991.19.  This is not accurate. I believe that pursuant to the consent decree between the California Attorney General and Chase, among others, the outstanding balance on the mortgage should be far less than $4,215,991.19 and I dispute this amount that Chase now asserts.  Attached hereto as Exhibit F is a true and correct copy of the consent decree between the California Attorney General and Chase.

12.    I have been defrauded by Chase over the years through their admitted interest rate manipulations.  Based on my calculations, Chase's loan balance should be as follows:

Total amount of overcharge is [$167,588.92, which is 137 months of interest (652,992.92 x 38% (137 out of 360) of the loan over charge is $248,499.73]

Improper charges by Chase:

7/16  $    811.25    Advertising

7/10  $ 2,336.00    Title Fees

12/1  $ 2,351.00    Title Fees

6/06  $    990.00    Title Fees
         $ 6,488.25    Subtotal  Erroneous charges on Chase proof of claim

         $ 45,184.80  Four Trial House Payments for Chase loan modification
                          program

         $ 51,673.05  Total amounts of charges/credits to account missing
         $ 461,088.65  Total over charges
      $    512,761.70  Total of the amount to be deducted from Chase's claim

      $ 4,215.919.19  Chase proof of claim total
      $    -512,761.70  Deductions for over charges and improper charges

      $    3,703,157.49    Proper amount of Chase's claim and my loan balance

Attached hereto as Exhibit G is an amortization table and detailed explanation of the above calculations as well as proof of loan modification payments that I made to Chase.

13.    Based on the above, if Chase's correct balance is $3,703,157 and the Property value is $4,995,000, that would leave $1,291,843 (29%) equity cushion to protect Chase's interest. Using the lower end of the valuation of $4,439,250 from Zillow.com, that would leave $736,093 (17%) equity cushion to protect Chase's interest.

14.    My assertion that Chase has defrauded me is supported by the following:

a)  Chase defrauded me by not offering a fair and reasonable loan modification.  Chase fully approved my loan modification request then accepted four $11,296.20 trial monthly payments.  Then Chase proposed raising my monthly payment from $8,818

and raised the principal and interest 61% (sixty one percent) to $14,241.16 a month, after I notified them I was experiencing a hardship. Then after Chase realized that the payment WITH property taxes and insurance exceeded my current monthly income, after taxes. Chase indicated that they would review again and get back to me but they never did. Chase eventually said just reapply again and I did. However, they never gave me a new modification. This was Chase's "bad faith" loan modification program. Attached hereto as Exhibit H are true and correct copies of my loan modification documents.

b) Chase has a decade long history of failing to properly consider loan modifications across the US and has done so with a systematic plan to get ownership of millions of appreciating properties sooner or later. I have been a victim of Chase's criminal conduct. Attached hereto as Exhibit I is a plea agreement signed by Chase in U.S. District Court in Connecticut in 2015, wherein Chase has admitted to this criminal conduct.

c) Chase has pled guilty to the Federal crimes involving widespread "interest rate manipulation." My Chase loan is a variable rate loan. The opportunity for me to have the Federal Court hear my claim is in this forum. The signed federal criminal consent decree bearing Chase's executive signature confirms the guilt. As a Federal right in the Crime Victims' Rights Act I am entitled to restitution, "a correct loan balance." Knowing how much is owed is critical to the financial affairs of any borrower. To date Chase has never corrected the home loan balance after being requested to do so. Attached hereto as Exhibit L is text of the Crime Victims' Rights Act.

15.    I have sued Chase in State court for their fraudulent handling of my loan. Attached hereto as Exhibit J is a true and correct copy of my complaint against Chase. Chase filed a demurrer to the complaint, which was granted by the trial court without leave to amend. I appealed that ruling and the appellate court granted my appeal and remanded the case back to the trial court. Attached hereto as Exhibit K is a true and correct copy the appellate court's ruling on my appeal. The case is now pending in the trial court.

1    I declare under penalty of perjury under the laws of the United States that the forgoing is

2  true and correct.

3    Executed this 30th day of April at Los Angeles, California

4

5    _____

6    Samuel Michael Saber

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF JANAKA L. PERERA

I, Janaka L. Perera, declare as follows:

1.     I am over eighteen years of age. I am a duly licensed Real Estate Broker in the State of California. The following averments are of my personal knowledge and if called upon can testify thereto.

2.     I am a licensed Real Estate Broker in the State of California.

3.     On April 26, 2019 I prepared a comparative market analysis of the real property located at 450 Via Lido Soud, Newport Beach, California (the "Property") for Samuel Saber.

4.     Based on my analysis, it is my opinion that if the Property were for sale, it should be listed at $4.95 million.   Attached hereto as Exhibit C is a true and correct copy of my comparative market analysis which I prepared for Samuel Saber.

I declare under penalty of perjury under the laws of the United States that the forgoing is true and correct.

Executed this 29th day of April at Burbank, California

DocuSigned by:

*Janaka Perera*

350AA327...
Janaka L. Perera

4/29/2019